# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.Q., a minor, by and through his Guardian ad Litem, Carolyn Rodriguez-Q.,<br>      Plaintiff,<br><br>        v.<br><br>ALEXANDER DEKOK, et al.,<br>      Defendants. | CV 18-10205 DSF (DFMx)<br><br>Order re Defendants' Motions to Dismiss and Motions to Strike (Dkts. 44, 45, 46, 47) |

Defendants Alexander Dekok, Dr. Stephen Bluestein, and Tonya Brunett move to dismiss Plaintiff B.Q.'s Second Amended Complaint. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. Factual Allegations

Plaintiff, a practicing Muslim, was a seventh-grade student at Mesa Elementary School, part of the Mesa Union School District (MUSD), during the 2017-18 school year. Dkt. 41, Second Am. Compl. (SAC), ¶¶ 15, 16.

Dekok taught Plaintiff's seventh-grade social studies class. Id. ¶ 18. Dekok did not address Plaintiff by his legal name during class, instead calling him "Bill." Id.

Around September 2017, a student shouted "Allahu Akbar" at Plaintiff in between classes. Id. ¶ 19. Plaintiff's parents reported

the incident to the school. Id. About two weeks later, Dr. Bluestein, the Mesa Elementary School principal, spoke to the offending student and reported to Plaintiff's parents that he sincerely believed the student did not remember the incident. Id. ¶¶ 20-21.

On October 24, 2017, Dekok gave his seventh-grade students (including Plaintiff) a worksheet that contained various false statements about Sharia law and Islamic practices. Id. ¶ 24. The worksheet used material obtained from a website titled "billionbibles.org," and included false statements such as: "a man can marry an infant girl and consummate the marriage when she is 9 years old," and "a woman or girl who alleges rape without producing 4 male witnesses is guilty of adultery." Id. ¶¶ 25-26; id., Ex. A.[1] The worksheet makes repeated references to rape. Id. ¶ 27. The back of the worksheet asks students to compare the culture depicted on the worksheet to American culture. Id. ¶ 29.[2] During this lesson, Dekok also showed two YouTube videos with images of Muslims engaged in violent behavior, including fighting with guns, and whipping and enslaving each other with chains. Id. ¶ 30. Plaintiff was extremely upset by the lesson, id. ¶ 38 and remained absent from school after October 24 because of the lesson and the failure to resolve the incident, id. ¶ 48. He was unable to attend Dekok's classes due to his fear that Dekok hated Muslims and might harm him. Id. ¶¶ 48, 112.

On October 26, 2017, the Council on American-Islamic Relations-Los Angeles (CAIR-LA) filed a Uniform Complaint on behalf of Plaintiff. Id. ¶ 44. On October 30, 2017, Plaintiff's

---

[1] Although the SAC refers to various "Attachments," the Court will refer to them as Exhibits.

[2] Exhibit A to the SAC actually states: "Compare these ideas to the laws/cultures you are used to."

2

mother informed Bluestein that multiple students had asked Plaintiff whether he was a Muslim, and that a student had "interfered" with his lunchbox. Id. ¶ 49.

Plaintiff returned to school on November 1, 2017, with the accommodation that he would not have to attend Dekok's social studies and language arts classes until an investigation—which was expected to take a couple of days—was completed. Id. ¶ 51. No other option was provided. Id. ¶ 51. During these class times, Plaintiff remained in the library. Id. ¶ 52. Beginning November 13, 2017, Plaintiff was provided with a tutor who was an unaccredited college student. Id. ¶ 61. At some point, Bluestein asked whether Plaintiff would return to Dekok's language arts class. Plaintiff felt pressured and agreed. Id. ¶¶ 52, 54, 55.[3] But after conferring with his parents, Plaintiff decided to remain in the library during both classes. Id. ¶ 55.

On December 22, 2017, MUSD issued a Written Report of Findings and Decision. Id. ¶ 73. Brunett, a member of the school district's Board, voted to reject the Uniform Complaint. Id. ¶ 70. Although she was a Board member, Plaintiff's mother was not involved in any Board discussions pertaining to this incident and was asked to recuse herself from the vote. Id. ¶¶ 65, 68. At the December Board meeting, in response to a visitor saying "Happy Holidays," Brunett said: "Around here, we say Merry Christmas" and kept her back turned to Plaintiff's mother for the entire Board meeting. Id. ¶¶ 66, 67.

In January 2018, CAIR-LA appealed MUSD's investigative findings to the California Department of Education (CDE). Id. ¶ 124. On March 5, 2018, the CDE issued a decision granting

---

[3] It is not clear from the allegations whether Plaintiff actually attended Dekok's language arts class, or merely agreed to attend the class the next day.

the appeal, finding MUSD's conclusion that it did not discriminate based on religion was "not consistent with law pursuant to 5CCR, Section 4633(e)." Id. ¶ 132; id., Ex. W. The CDE also concluded that Dekok's lesson constituted discrimination based on religion in violation of California Education Code §§ 220 and 51500. Id. ¶¶ 134-35.

Plaintiff has since left Mesa Elementary School. Id. ¶ 126. Both Bluestein and Dekok have been terminated from Mesa Elementary School. Id. ¶¶ 130-31.

## II. Legal Standard

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original) (citation omitted). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and

continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

### III.  Discussion

Plaintiff brings individual capacity causes of action under 42 U.S.C. § 1983 against each Defendant for violations of the First Amendment's Establishment Clause and the Fourteenth Amendment's Equal Protection Clause.

### A.  Plaintiff's State-Created Danger Claim (Third Cause of Action)

Plaintiff brings a cause of action for "Deliberate Indifference of State-Created Danger" under the Equal Protection Clause.  See SAC ¶¶ 185-200.  Plaintiff's oppositions to the motions to dismiss cite cases discussing the Fourteenth Amendment's state-created danger doctrine.  In certain circumstances, this doctrine permits a claim for a violation of the Due Process Clause, not the Equal

5

Protection Clause. See, e.g., Pauluk v. Savage, 836 F.3d 1117, 1122 (9th Cir. 2016). That Plaintiff brings his claim on equal protection grounds, see SAC ¶ 197, is itself grounds for dismissal.

Even if the Court were to evaluate the claim under the Due Process Clause, Plaintiff fails to state a claim against Dekok or Bluestein. "Under the state-created danger doctrine, a state actor can be held liable for failing to protect a person's interest in his *personal security or bodily integrity* when the state actor affirmatively and with deliberate indifference placed that person in danger." Id. (emphasis added). The doctrine holds state actors liable "for their roles in creating or exposing individuals to danger they otherwise would not have faced." Id. (quoting Kennedy v. City of Ridgefield, 439 F.3d 1055, 1062 (9th Cir. 2006)).

Plaintiff alleges that Dekok's October 24 lesson created a hostile learning environment. SAC ¶ 187. He additionally argues that Bluestein and Brunett failed to sufficiently remedy the situation. Id. ¶¶ 191-94.

The state-created danger doctrine is narrow and the Court declines to extend the concept of "personal security or bodily integrity," see, e.g., Pauluk, 836 F.3d at 1122, to include the hostile learning environment allegedly created by Dekok's lecture. There is no indication that Plaintiff's "personal security or bodily integrity" was ever threatened.[4] In addition, Plaintiff's allegations that Bluestein failed to remedy the situation quickly

---

[4] Plaintiff argues that he was psychologically harmed by the incident. He alleges he "felt personally attacked by DEKOK'S teachings on Islam" and thought Dekok hated all Muslims, including Plaintiff. SAC ¶ 47. Plaintiff also alleges that other students had asked him "whether it was true he was a Muslim" and that a student "had interfered with his lunchbox," which caused him an intense feeling of isolation. Id. ¶ 49. These are not the types of state-created dangers to which this doctrine has been found to apply.

6

enough do not constitute an affirmative act under this doctrine. See Stiles ex rel. D.S. v. Grainger County, 819 F.3d 834, 854-55 (6th Cir. 2016) (citing Morrow v. Balaski, 719 F.3d 160, 178 (3d Cir. 2013) (en banc) and other cases). Even "affirmatively returning a victim to a preexisting situation of danger does not create or increase the victim's risk of harm." Id. (citing Bukowski v. City of Akron, 326 F.3d 702, 709 (6th Cir. 2003)).

Plaintiff's Third Cause of Action is DISMISSED with prejudice as to all Defendants.

## B. Constitutional Claims Against Brunett

The elements of a § 1983 claim are: (1) violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting "under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

In its prior dismissal of Plaintiff's constitutional claims against Brunett, the Court looked to Kawaoka v. City of Arroyo Grande, 17 F.3d 1227 (9th Cir. 1994), cert. denied, 513 U.S. 870, and Jeffries v. Harleston, 52 F.3d 9 (2d Cir. 1995), for guidance. See Dkt. 38 at 8. The Court concluded that Plaintiff failed to sufficiently plead that Brunett's single vote—even if discriminatory—was the proximate cause of any constitutional harm suffered by Plaintiff. Id.

Plaintiff now pleads several additional facts: that Brunett's "outspoken manner" influenced other Board members to vote to deny Plaintiff's Uniform Complaint, that Brunett did not sit next to Plaintiff's mother and kept her back turned to Plaintiff's mother during a Board meeting, and that Brunett lives in the

neighborhood and attends the same country club as two other Board members. SAC ¶¶ 66, 70.[5]

Plaintiff's allegations still do not demonstrate that any other member of the Board acted (or voted) with improper purpose. Stating that Brunett's outspoken manner caused other Board members (who happened to live in her neighborhood or be members of the same country club) to vote as she did is not sufficient to show those members voted with discriminatory intent. The Court again concludes that Plaintiff has failed to plead that Brunett's conduct was the proximate cause of any constitutional harm suffered by Plaintiff.

More generally, Plaintiff argues that Brunett should be held liable under § 1983 for "ratifying" the actions of Dekok. Vicarious liability does not apply to suits under § 1983, although supervisory officials may be liable on the basis of their own acts or omissions. See Iqbal, 556 U.S. at 676; Starr v. Baca, 652 F.3d at 1207. Claims that supervisors are liable under § 1983 must plead specific facts demonstrating that their acts or omissions caused deprivation of a plaintiff's constitutional rights. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (A "plaintiff must allege facts, not simply conclusions, that show that an individual

---

[5] In its previous Order, the Court concluded that Brunett's alleged statement regarding Christmas, without any allegation that it was made in the presence of Plaintiff, could not on its own be the proximate cause of constitutional injury to Plaintiff. See Dkt. 38, at 10 n.9 (citing S.V. v. Delano Union Sch. Dist., No. 1:17-cv-00780, 2018 WL 400321 at *2 (E.D. Cal. Jan. 12, 2018)). Although Plaintiff now pleads that Brunett shouted the comment in "a very loud, boisterous, and snarky manner," this does not change the Court's analysis that a comment made outside the presence of Plaintiff is not itself a proximate cause of constitutional injury to Plaintiff.

was *personally involved* in the deprivation of his civil rights." (emphasis added)).

Plaintiff asserts that "Defendant BRUNETT was employed by, and an agent of, MUSD in a managerial position and Defendant BRUNETT regularly exercised control over Defendant DEKOK's working conditions." SAC ¶ 11. But Plaintiff pleads no specific facts suggesting that Brunett had any power over Dekok himself or his lesson plan, or any personal involvement in the deprivation of Plaintiff's constitutional rights, outside of her role as a member of the Board. See id. This conclusory allegation is not sufficient to demonstrate that Brunett's own acts or omissions led to the deprivation of Plaintiff's constitutional rights.

For the reasons discussed above, because the Board acts by majority vote, see Cal. Educ. Code § 35164, any act or omission by Brunett in that capacity could not itself cause constitutional harm to Plaintiff. Plaintiff's First and Second Causes of Action against Brunett are DISMISSED with leave to amend.[6]

## C. Dekok - Qualified Immunity

Dekok moves for qualified immunity on Plaintiff's Second Cause of Action under the Equal Protection Clause, which alleges that Dekok's October 24 lesson purposefully discriminated against Islam. SAC ¶ 264.

Qualified immunity is more than a mere defense at trial; it is an entitlement not to stand trial or face the other burdens of litigation. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Because the benefit of immunity is effectively lost if the case erroneously goes to trial, the Supreme Court repeatedly has stressed the importance of resolving immunity questions at the earliest

---

[6] Brunett's Motion to strike is DENIED as moot.

possible stage of the litigation.  Saucier v. Katz, 533 U.S. 194, 200-01 (2001) overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009).  To determine if a defendant is entitled to qualified immunity, the Court must ask "two questions: (1) whether, taking the facts in the light most favorable to the nonmoving party, the government official's conduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct."  C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 986 (9th Cir. 2011) (citing Saucier, 533 U.S. at 200-01).  A court may address the second question first, particularly where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  Pearson, 555 U.S. at 237.

For a constitutional right to be "clearly established," its "contours [must be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  Although Supreme Court "caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam)).  "The 'clearly established' standard also requires that the legal principle clearly prohibit the [defendant's] conduct in the particular circumstances before him.  The rule's contours must be so well defined that it is clear" to a reasonable person in defendant's position "that his conduct was unlawful in the situation he confronted."  District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018).  "It is not enough that the rule is suggested by then-existing precedent."  Id.  "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law."  Kisela, 138 S.Ct. at 1152 (quoting White, 137 S. Ct. at 551).

10

"So long as existing caselaw 'did not preclude' an official from reasonably believing that his or her conduct was lawful, the official has a right to qualified immunity." Kramer v. Cullinan, 878 F.3d 1156, 1163 (9th Cir. 2018) (citing Lane v. Franks, 573 U.S. 228, 243 (2014)). "To evaluate whether a particular question is beyond debate, a court looks for 'cases of controlling authority in [the plaintiff's] jurisdiction at the time' or 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" Id. (citing Wilson v. Layne, 526 U.S. 603, 617 (1999)). The plaintiff bears the burden of proving that his allegedly violated rights were clearly established. Alston v. Read, 663 F.3d 1094, 1098 (9th Cir. 2011).

The Court begins with the second question—whether the right was clearly established. The right must be defined precisely. Merely stating that the Equal Protection Clause is violated if school officials discriminate in education is not sufficient. See C.F., 654 F.3d at 986-87.

To deny Dekok qualified immunity this Court would be required to find existing precedent that renders the constitutional question beyond debate. Kisela, 138 S. Ct. at 1152. The Court has found none. In his qualified immunity analysis, Plaintiff cites only two cases, which he erroneously contends clearly established the law at the appropriate level of specificity here and denied qualified immunity.[7] The first concerned whether a plaintiff had stated a claim against a school district for the conduct of a teacher who used a racial epithet as part of a classroom lecture. Doe v. L.A. Unified Sch. Dist., No. 2:16-cv-00305-CAS (JEMx), 2016 U.S. Dist. LEXIS 66291, at *16-21 (C.D. Cal. May 16, 2016). The case

---

[7] Dekok's motion to dismiss is based entirely on qualified immunity, but Plaintiff offers only an extremely short discussion on the issue of qualified immunity under the Equal Protection Clause.

did not address whether the teacher was entitled to qualified immunity, or even whether the plaintiff stated a claim specifically against the teacher. Id. Plaintiff also cites to Mansourian v. Board of Regents of the University of California at Davis, 757 F. Supp. 2d 1030 (E.D. Cal. 2010), but it concerned a different right—the right to be free from purposeful discrimination by state actors on the basis of gender through exclusion in a wrestling program.

Plaintiff fails to meet his burden to show that at the time of Dekok's lecture there was a clearly established right *under the Equal Protection Clause* that prohibited the use of content in the classroom that discriminated against a particular religion.[8] He fails to present controlling precedent—or otherwise demonstrate that there is a *consensus* of persuasive authority—that would have put Dekok on notice that he was violating the Equal Protection Clause when he gave his lecture. Kramer, 878 F.3d at 1163 (requiring either cases of controlling authority or a "consensus of cases of persuasive authority").

Dekok is entitled to qualified immunity. Plaintiff's Second Cause of Action against Dekok is DISMISSED without leave to amend.[9]

### D. Bluestein – Qualified Immunity

Bluestein moves for qualified immunity on Plaintiff's First and Second Causes of Action.

---

[8] The Court notes this analysis does not consider whether such a right exists, only whether it is clearly established. Nor does this analysis consider whether the law is clearly established as to Dekok under the Establishment Clause, as Dekok does not assert a right to qualified immunity as to Plaintiff's First Cause of Action.

[9] Dekok's motion to strike is DENIED as moot.

### 1. Establishment Clause (First Cause of Action)

Plaintiff advances three theories of liability under the Establishment Clause: (1) that the primary effect of Bluestein's actions inhibited Plaintiff's religious faith under Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971), (2) that Bluestein's actions met the coercion test under Lee v. Weisman, 505 U.S. 577 (1992), and (3) that Bluestein failed to remedy an ongoing Establishment Clause violation.

Plaintiff does not allege that Bluestein pre-approved the contents of Dekok's October 24 lesson, or that he participated directly or indirectly in the lesson. Plaintiff does not plead facts suggesting that Bluestein directly endorsed any religious faith. The allegations all concern Bluestein's allegedly insufficient response to the incident.

The Court again begins with the second question of the qualified immunity analysis—whether the right was clearly established. Plaintiff cites four cases, none of which clearly and precisely establishes the rights he claims were violated: Trunk v. City of San Diego, 629 F.3d 1099, 1109 (9th Cir. 2011) (applying the Lemon primary effect analysis to a memorial in the shape of a Latin cross); Am. Family Ass'n v. City & County of San Francisco, 277 F.3d 1114, 1122 (9th Cir. 2002) (applying the Lemon primary effect analysis to a city council resolution); Brown v. Woodland Joint Unified Sch. Dist., 27 F.3d 1373, 1383 (9th Cir. 1994) (finding that teaching elementary school students about witchcraft, including by having students pretend they were witches and create poetic chants, did not have the primary effect of endorsing or inhibiting religion, and did not violate the Establishment Clause); and Caldwell v. Roseville Joint Union High Sch. Dist., No. Civ. S-05-0061 FCD JFM (E.D. Cal. Oct. 25, 2005) (concluding that a parent who sought to add material questioning the theory of evolution into a science program but was

prevented from doing so through various school channels stated a claim under the Establishment Clause).

Plaintiff fails to show the law clearly established at the appropriate level of specificity that Bluestein's actions violated the Establishment Clause such that Bluestein could not reasonably believe his conduct was lawful. See Kramer, 878 F.3d at 116.

Bluestein is entitled to qualified immunity. Plaintiff's First Cause of Action against Bluestein is DISMISSED without leave to amend.

### 2. Equal Protection Claim for Religious Discrimination

Plaintiff alleges that the following actions by Bluestein demonstrate deliberate indifference to Plaintiff's rights under the Equal Protection Clause[10]: Plaintiff was required (pursuant to an agreement with Plaintiff's parents) to spend two hours a day in the library rather than attending Dekok's classes, SAC ¶ 52, Bluestein asked Plaintiff to return to his literature class with Dekok, id. ¶¶ 53, 55, and Bluestein failed to place Dekok on administrative leave during the school's investigation, id. ¶ 50. Dkt. 52 at 14-15.

The Court again begins with the second question of the qualified immunity analysis—whether the right was clearly established.

Plaintiff cites only a single case for the proposition that the "law was clear that deliberate indifference may be found if a

---

[10] Plaintiff's Complaint states that Brunett exhibited deliberate indifference with regard to Plaintiff's rights under the First Amendment, even though the cause of action is brought under the Equal Protection Clause. See SAC ¶ 196.

14

school principal responds (or fails to respond) to known discrimination in a manner clearly unreasonable." Dkt. 52 (citing Mansourian, 757 F. Supp. 2d at 1046. But this does not place the constitutional question beyond debate. Mansourian concerned the right to be free of purposeful discrimination by state actors on the basis of gender through their exclusion in a wrestling program.

Plaintiff fails to show that there was clearly established statutory law or caselaw suggesting that Bluestein's actions (*i.e.*, his choice not to place Dekok on leave and his agreement that Plaintiff would be allowed to go to the library rather than class) would violate the Equal Protection Clause and would therefore have precluded Bluestein from reasonably believing his conduct was lawful. See Kramer, 878 F.3d at 116.

Bluestein is entitled to qualified immunity on Plaintiff's Second Cause of Action. Plaintiff's Second Cause of Action against Bluestein is DISMISSED without leave to amend.[11]

## IV. Conclusion

Plaintiff's Third Cause of Action is DISMISSED without leave to amend. Plaintiff's First and Second Causes of Action against Brunett are DISMISSED with leave to amend. Plaintiff's First and Second Causes of Action against Bluestein and Plaintiff's Second Cause of Action against Dekok are DISMISSED without leave to amend. An amended complaint may be filed and served no later than September 3, 2019. Failure to file by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a separate, properly noticed motion.

---

[11] Bluestein's motion to strike is DENIED as moot.

IT IS SO ORDERED.

Date: August 7, 2019

_____

Dale S. Fischer
United States District Judge